**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF KENTUCKY**
**CENTRAL DIVISION**
**LEXINGTON**

**CRIMINAL ACTION NO. 5:23-cr-9-KKC-MAS**

**UNITED STATES OF AMERICA**                                    **PLAINTIFF**

v.      **UNITED STATES' MOTION TO SET JANUARY 15, 2025 DEADLINE FOR DEFENDANTS TO DISCLOSE ANY ADVICE-OF-COUNSEL DEFENSE AND TO DISCLOSE DISCOVERY RELATED TO THAT DEFENSE**

**JOSE ALZADON, M.D.,**
**MICHAEL BREGENZER, AND**
**BARBIE VANHOOSE**                                            **DEFENDANTS**

The Government asks this Court for an order imposing a January 15, 2025 deadline on Defendants José Alzadon, Michael Bregenzer, and Barbie Vanhoose to make disclosures regarding raising either an advice-of-counsel defense or a good-faith defense tied to advice of counsel.

By this deadline, the Government asks that each Defendant be required to: (1) inform the Government whether or not he or she will raise this type of defense, and (2) if he or she plans to raise the defense, identify the attorneys upon whose advice he or she will rely and "simultaneously produce to the Government all documents concerning the intended advice-of-counsel defense, including any documents that might impeach or undermine the defense." *United States v. Salzano*, No. 22-CR-690, 2024 WL 640751, at *2 (D.N.J. Feb. 15, 2024) (so requiring as a prerequisite to raising the advice-of-counsel defense).

The Government needs this deadline to have sufficient time to investigate such a defense in advance of the March 3, 2025 trial date and to take a position in advance of trial on whether raising the defense is proper. At this point, Defendant Alzadon, who does not oppose the relief opposed in this motion, has identified that he may raise this defense by pointing to advice from two lawyers. Defendant Vanhoose, who also does not oppose the relief in this motion, has

1

disclaimed raising any advice-of-counsel defense. Only Defendant Bregenzer, who is the sole defendant opposing the relief outlined in this motion, has refused to provide any information about this potential defense. Based on these representations alone, the Government needs time to investigate these potential defenses to prevent disruptions at trial or a continuance of the trial date.

The January 15, 2025 deadline is also appropriate here because of extenuating circumstances that do not appear to be present in other cases where this issue arises. As detailed below, this case implicates Defendants' conduct at a series of opioid addiction centers collectively known as Kentucky Addiction Centers ("KAC"). But here, lawyers potentially implicated in an advice-of-counsel defense also potentially represented multiple Defendants, other staff associated with Defendants and KAC, and KAC itself and/or related entities. Given the complexities created by these potential overlapping privilege claims and the need for the Government to address—or potentially litigate—third-party privilege claims, the Government needs more time to investigate these defenses to keep this case on track with the current trial date.

## FACTUAL BACKGROUND

### A.    Charged Conduct

On June 6, 2024, a grand jury returned a Superseding Indictment against Defendants for health care fraud, aggravated identity theft, and illegal distribution of controlled substances in connection with their work at KAC. R.87, 262-278.[1] The Superseding Indictment identifies Alzadon as a former doctor at KAC, Bregenzer as a former KAC owner, and Vanhoose as a former KAC billing manager. *Id*. at 262. It also identifies Doctor-1 as another medical doctor employed by KAC. *Id*. Alzadon and Doctor-1 prescribed controlled substances, such as the opioid addiction medication Suboxone, as part of their purported treatment of opioid addiction.

---

[1] All references to pleadings are by docket entry and PageID number.

The Superseding Indictment likewise identifies overlapping schemes through which Defendants unlawfully enriched themselves and KAC. For example, Defendants committed health care fraud by billing health insurers for services that were not provided, provided by unqualified doctors, billed in a manner that was medically unnecessary, or billed at a level of complexity that was not in accordance with services actually provided at KAC. *Id*. at 269-270.

Defendants also billed for—or conspired to bill for—services in the name of Doctor-1 when in fact only Alzadon had provided any services to the patient. *Id*. at 272-273. Defendants further conspired to write controlled substance prescriptions, including for Suboxone, in the name of Doctor-1, when in fact only Alzadon (not Doctor-1) had substantively interacted with or treated the patient and would have therefore been the prescribing doctor.

In furtherance of this deception on the identity of the true Suboxone prescriber, Defendants also conspired to allow lower-level KAC staff to retain possession of and use electronic prescribing tokens that should have remained in the possession of KAC medical doctors—the equivalent of turning over a prescribing pad to lower-level staff to write prescriptions. In truth, placing the tokens in the possession of front-desk staff facilitated writing prescriptions in Doctor-1's name because the prescriptions could be submitted electronically with Doctor-1's prescribing credentials—even as Alzadon was the only doctor who substantively interacted with the patient. *Id*. at 274-275.

For this conduct, Defendants are charged with one count of conspiracy to commit health care fraud in violation of 18 U.S.C. § 1349, ten counts of health care fraud in violation of 18 U.S.C. § 1347, two counts of aggravated identity theft in violation of 18 U.S.C. § 1028A, and one count conspiracy to unlawfully distribute a controlled substance in violation of 21 U.S.C. § 846.

**B.      Conduct that May Be Connected to an Advice-of-Counsel Defense.**

This case and the related investigation have involved several lawyers, at least some of whom have represented multiple individuals connected to this case. For example, Lawyer-1 appears to have been involved in calls—including with Bregenzer—that occurred during the charged health-care fraud conspiracy. At least one of these calls implicated two medical providers hired by Bregenzer to work at KAC.  These medical providers reported a number of problems in the way KAC was operating, including the fact that KAC was over-billing for services and that Alzadon was billing services and writing prescriptions in the name of Doctor-1.

In at least late 2020, Lawyer-1 also represented both a KAC employee and doctor, Jason Castle, and the pain clinic that Castle operated after law enforcement executed a search warrant on both the pain clinic and KAC.  Castle ultimately pled guilty to illegal distribution of controlled substances, *United States v. Castle*, No. 7:21-cr-1-REW (E.D. Ky. filed Dec. 22, 2020), in a matter where Castle was represented by other lawyers who do not appear to have represented any other individuals or entities related to KAC.

Next, Lawyer-1 has represented KAC as an entity in litigation against Alzadon in state court for matters that again may touch upon the facts at issue in this case—such as Alzadon's termination from KAC in October 2021. *See, e.g.*, Complaint, *Kentucky Addiction Centers, LLC, v. Alzadon*, No. 21-CI-479 (Clark Cir. Court filed Nov. 24, 2021) (alleging, among other things, that Alzadon breached contracts with KAC and improperly interfered with KAC's business relations). And Lawyer-1 has now been identified by Alzadon himself as a lawyer connected to Alzadon's own advice-of-counsel defense.

Another attorney, Lawyer-2, held herself out as counsel for KAC just after the execution of the search warrant and appears to also have represented Alzadon in a personal capacity in

relation to administrative proceedings prior to the period of the charged conspiracies. Lawyer-2 has represented at least one former KAC employee in an interview with the Government and is another lawyer recently identified by Alzadon as connected to his advice-of-counsel defense.

Finally, Lawyer-3 represented KAC before indictment and appears to have employed an investigator that conducted a review of KAC's practices before seemingly ending his representation in 2023, around the time that this case was originally indicted.

The Government is unaware of any advice these lawyers may have provided to any Defendant. Indeed, it has been cautious in interviews with individuals associated with KAC that they specifically not discuss any advice they have received from lawyers.

## C.    The Government's Attempts To Address the Advice-of-Counsel Issue without the Court's Intervention.

This case was originally scheduled for trial starting on November 4, 2024, with pretrial deadlines starting in the summer of 2024. *See* Order, R.83, 253. For example, the deadline for the parties to exchange exhibit lists, witness lists, and expert disclosures was August 6, 2024. *Id*. The Government made these disclosures on this date. Defendants moved for a continuance of the trial date and disclosure deadlines in light of discovery produced by the Government, R.98, and the Court granted this relief in an August 15, 2024 hearing, R.105. The deadline for disclosing experts passed on October 30, 2024, with no disclosures from Defendants.[2] The deadline for disclosing the witness and exhibit lists is today: December 3, 2024. *Id*.

After the trial date was continued, the Government attempted to address the advice-of-counsel issue with Defendants' counsel through an email first sent on August 31, 2024. The

---

[2] The Government emailed defense counsel on November 1, 2024, reminding counsel of the expert disclosure deadline and stating that the Government assumed no expert disclosures were forthcoming in light of the deadline. No Defendant has responded to the Government's November 1, 2024 email and no Defendant has disclosed any experts.

Government asked that Defendants identify if they planned to raise: (a) an advice-of-counsel defense; or (b) a good-faith defense based on any legal advice obtained pertaining to the conduct at issue in the Superseding Indictment. The Government further asked for the names and contact information for any attorneys who advised on matters pertaining to the conduct at issue in the Superseding Indictment, as well as any documents pertaining to such legal advice, such as emails, text messages, or legal memos.

Defendants' counsel did not initially respond to this request. In follow-up communications, Vanhoose's attorney stated that he did not anticipate asserting a defense related to advice of counsel, though he left open the option to raise a good-faith defense unrelated to this issue. Counsel for Alzadon responded by identifying Lawyer-1 and Lawyer-2. In a phone call with the Government on November 27, 2024, counsel for Alzadon agreed to the January 15, 2025 deadline outlined in this motion.

Bregenzer's attorney initially did not respond to the first two communications from the Government on this issue. After another follow-up email sent in November 2024, counsel for Bregenzer ultimately refused to answer the Government's inquiries by claiming that no response was possible "[g]iven the continued discovery productions in this case and our need to review all discovery before solidifying our strategy." Counsel stated that he would take the same position if the Government raised the matter in a motion.

**ARGUMENT**

A.    **Legal Standard**

An advice-of-counsel defense has two elements: "(1) full disclosure of all pertinent facts to counsel, and (2) good faith reliance on counsel's advice." *United States v. Lindo*, 18 F.3d 353, 356 (6th Cir. 1994). At the same time, it is "well established that an instruction should not be given

6

if it lacks evidentiary support or is based upon mere suspicion or speculation," *id.*, and as a corollary to this rule, the lion's share of courts to have addressed this issue have required pretrial notice of this defense to allow the Government to assess whether these elements are met.

One recent case emblematic of the reasoning underpinning the pretrial disclosure requirement is *United States v. Salzano*, No. 22-CR-690, 2024 WL 640751, at *2 (D.N.J. Feb. 15, 2024), which builds upon other oft-cited authorities on this issue, including *United States v. Crowder*, 325 F. Supp. 3d 131, 138 (D.D.C. 2018), and *United States v. Dallmann*, 433 F. Supp. 3d 804, 812 (E.D. Va. 2020).

At the outset, *Salzano* recognized the advice-of-counsel defense as a "more specific form of the defense of good faith" and held that "[b]y invoking the defense, the defendant waives attorney-client privilege and must therefore disclose to the government: (1) all 'communications or evidence' the defendant intends to rely on to establish the defense, and (2) any 'otherwise-privileged communications' the defendant does '*not* intend to use at trial, but that are relevant to proving or undermining' it." *Id*. at *2 (quoting *Crowder*, 325 F. Supp. 3d at 138).

*Salzano* further reasoned that, although there was no specific requirement in the Federal Rules of Criminal Procedure for a defendant to provide pretrial notice of the defense, imposing such a requirement derived from a district court's "broad discretion to impose disclosure and notice requirements outside the rules." *Id*. (citing *United States v. Armstrong*, 517 U.S. 456, 474 (1996)). Setting a pretrial notice deadline would avoid disruption and delay during trial, if the defense was raised during trial. *Id*. And given this broad discretion and the desire to avoid delay at trial, as *Salzano* recognized, "the majority of district courts that have considered the question have imposed a pretrial notice and discovery requirement," even as some courts bucked this trend. *Id*. (citing, *inter alia*, *Dallmann*, 433 F. Supp. 3d at 812).

*Salzano* also distinguished the minority of decisions that did not allow for pretrial disclosure on a ground not present in *Salzano*—namely, the concern that a defendant should be able to "wait and decide what defenses to raise once they see what evidence the Government presents at trial." *Id*. *Salzano* discounted this concern, given the relative proximity to the trial date for the requested disclosures and the fact that the case involved tax fraud charges in which the defendant had already indicated the possibility of raising this defense. *Id*.

In light of this reasoning, these facts, and the balance of authority on the issue, *Salzano* ordered that the defendant "confirm whether he intends to invoke the advice-of-counsel defense (and therefore waive privilege as to communications with the attorneys named as potential witnesses)." *Id*. at *3. The *Salzano* court further ordered that, if the defendant decided to raise the defense, he "simultaneously produce to the Government all documents concerning the intended advice-of-counsel defense, including any documents that might impeach or undermine the defense." *Id*.; *see also, e.g.*, *Crowder*, 325 F. Supp. 3d at 138 (same relief including requirement to "identify and disclose to the government all materials relevant to the assertion of the defense, whether supportive of defendants' case or not").

## B.    Application

This Court should follow the reasoning of cases like *Salzano* and require Defendants to disclose any advice-of-counsel defense by January 15, 2025, at which point they should simultaneously produce to the Government all documents concerning the intended advice-of-counsel defense, including any documents that might impeach or undermine the defense. *Salzano*, 2024 WL 640751, at *2. This position accords with the balance of authority on this issue, *id*., and will further the interests of an efficient trial presentation that is free of delays that could arise if the Government has to investigate advice-of-counsel issues during trial.

8

To be sure, the Government recognizes that it is asking for an earlier deadline—at around a month and a half before trial—than contemplated in other cases, including *Salzano*'s deadline of two weeks before trial. But more time than was allowed in cases like *Salzano* is appropriate in this case for multiple reasons.

First, this is a multi-defendant case with multiple lawyers potentially connected to the defense. In contrast, *Salzano* was being tried as a single defendant case[3] and did not seemingly involve as many lawyers.

A second, related issue is that the Government anticipates having to navigate overlapping privilege claims or documents that could implicate the rights of third parties. For example, with regard to Lawyer-1, who represented another KAC employee, KAC the entity, and purportedly gave legal advice upon which Alzadon relied, the Government is now in the process of working with the current owners of KAC—which remains an ongoing entity—to resolve any privilege claims that entity may assert related to Lawyer-1's representation of KAC. A similar process would apply to Lawyer-2, who represented KAC and purportedly provided advice to Alzadon upon which he seeks to rely. The process of obtaining waivers is ongoing and may require additional litigation if the Government cannot reach agreements with other potential privilege holders.

At base, the Government is asking for some additional buffer to address whatever defenses are disclosed on January 15, 2025, to allow the Government to address any third-party privilege claims or related issues that may arise. *Cf. United States v. Trump*, No. CR 23-257 (TSC), 2023 WL 7384233, at *2 (D.D.C. Nov. 8, 2023) (imposing a January 15, 2024 deadline for disclosures in advance of a March 3, 2024 trial date in another case that involved potentially complex privilege issues with only one defendant).

---

[3] The only co-defendant in *Salzano* fled the United States. *Salzano*, 2024 WL 640751, at *1 n.1.

9

Next, the concern that early notice will not give Defendants enough time to strategize about their defense until after they see the Government's evidence is not present in this case as the Defendants have had a substantial amount of time to review the Government's likely trial proof. For example, for approximately four months, Defendants have had the Government's trial exhibit list, the Government's witness list, and all of its expert disclosures. In fact, they have had many of the expert disclosures for over a year and most of the interview reports connected to witnesses on the Government's witness list since March 2023.

To be sure, the Government will disclose updated versions of its exhibit and witness lists later today. But as will be plain from that filing, that additional disclosure will not dramatically change what the Government disclosed in August 2024. The Government will add text message based on its review of messages that only became available to the Government in August 2024, after Bregenzer had a chance to assert privilege claims over the messages. The Government has also made minor other additions to its exhibit and witness list.

Finally, Bregenzer's claim that he cannot disclose his defense because he is still processing discovery is unpersuasive. To be sure, through an inadvertence, the Government did disclose additional discovery in August 2024, and the Government's Filter Team made an additional production of the text messages first to Bregenzer in August 2024 so Bregenzer could assert privilege claims over the messages.

But Bregenzer has since had months to process the discovery with the benefit of the Government's exhibit list to guide him in identifying the documents that the Government will rely upon at trial. Moreover, much of the discovery in the case—and the related trial proof—is comprised of documents Bregenzer had access to for years either because it is comprised of emails or texts he himself sent or received or is part of discovery produced to him shortly after indictment

in February 2023. Bregenzer will now have over an additional month—until January 15, 2025—to decide how the Government's additional disclosures from today will shape his trial strategy. And Bregenzer agreed to a trial date and pretrial motions deadlines that are now pending and that would contemplate that he has adequate time to process any discovery produced earlier this year.

<strong>CONCLUSION</strong>

For the foregoing reasons, the Government respectfully requests an order from this Court directing Defendants to disclose by January 15, 2025, whether they will raise any advice-of-counsel defense and to disclose all documents concerning the intended defense, including any documents that might impeach or undermine the defense.

Respectfully submitted,

CARLTON S. SHIER, IV
UNITED STATES ATTORNEY

GLENN S. LEON
CHIEF, FRAUD SECTION

By:     *s/Dermot Lynch*
        Dermot Lynch
        Sarah Edwards
        Samad Pardesi
        Trial Attorneys
        U.S. Department of Justice
        Criminal Division, Fraud Section
        1400 New York Avenue, NW
        Washington, DC 20005
        202-591-6015
        dermot.lynch@usdoj.gov