# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF KENTUCKY
## LEXINGTON DIVISION
## CRIMINAL ACTION NO. 5:23-cr-00009-KKC

### *ELECTRONICALLY FILED*

UNITED STATES OF AMERICA                                    PLAINTIFF

v.

JOSE ALZADON, ET AL.                                       DEFENDANT

---

## DEFENDANT MICHAEL BREGENZER'S RESPONSE TO GOVERNMENT'S OMNIBUS PRETRIAL PLEADING

---

**TABLE OF CONTENTS**

INTRODUCTION ............................................................................................3

BACKGROUND ............................................................................................3

ARGUMENT ................................................................................................4

    I.   The Court should exclude evidence related to Jose Alzadon's prior conduct. .......................................................................................................4

        A.   Applicable law. ...............................................................................5

        B.   Discussion. .....................................................................................8

            1.   The Court should exclude evidence of Jose Alzadon's conduct at Highlands Hospital. ...........................................................8

            2.   The Court should exclude evidence of Jose Alzadon's conduct at Irvington Hospital. ...............................................................11

    II.   The Court should exclude evidence of the Medicare enrollment form. ......16

CONCLUSION .............................................................................................17

CERTIFICATE OF SERVICE .......................................................................18

## INTRODUCTION

Defendant Michael Bregenzer submits this response to the Government's Omnibus Pretrial Pleading (ECF No. 129). Defendants (Jose Alzadon, Michael Bregenzer, and Barbie Vanhoose) are jointly charged in a fourteen-count Superseding Indictment ("S-1 Indictment") alleging two conspiracies as well as aggravated identity theft. Mr. Bregenzer is charged with aiding and abetting Alzadon in the aggravated identity theft counts.

The Government seeks to introduce evidence of Alzadon's conduct from several years before his time at KAC. The Court should decline to admit this evidence because the Government cannot establish a basis for admission of this evidence under Federal Rule of Evidence 404(b), and because Rule 403's balancing test tips overwhelmingly in favor of exclusion.

## BACKGROUND

The S-1 Indictment charges all Defendants with various offenses under Titles 18 and 21 related to their work at, or ownership of, a group of Suboxone clinics (Kentucky Addiction Centers or "KAC") in Kentucky. *See* ECF No. 87 (the S-1 Indictment). Count One charges conspiracy to commit health care fraud under 18 U.S.C. § 1347, and alleges, in part, that KAC fraudulently billed Medicare, Medicaid, and other health care benefit programs by falsely requesting reimbursement for work that Dr. Ricardo Alzadon had performed when it was

actually Jose Alzadon who performed the medical work. S-1 Indictment ¶ 34. Mr. Bregenzer and Alzadon are charged together in this conspiracy count.

In addition to several, substantive counts of health care fraud, the S-1 Indictment charges Alzadon with two counts of aggravated identity theft under 18 U.S.C. § 1028A(a)(1). Mr. Bregenzer is charged with aiding and abetting Alzadon under these two counts. S-1 Indictment ¶¶ 40-43.

Finally, all defendants are charged with conspiracy to violate the Controlled Substances Act by (1) allowing unauthorized personnel to possess controlled substance prescribing devices and by (2) issuing prescriptions for controlled substances under the DEA number of Dr. Ricardo Alzadon without Dr. Ricardo Alzadon's authorization. S-1 Indictment ¶¶ 44-48.

## ARGUMENT

I. **The Court should exclude evidence related to Jose Alzadon's prior conduct.**

The Government seeks to introduce detailed evidence regarding Jose Alzadon's prior conduct at hospitals in Kentucky. Omnibus at 9-16. The evidence includes a series of documents—some from over a decade ago, some from over a quarter century ago—regarding disciplinary matters centered on Alzadon. Omnibus Ex. A at 16-36, 36-38. The documents involve inflammatory and derogatory language that impugn Alzadon's competency as a doctor, including "serious

concerns about the well being of . . . patients," statements that question Alzadon's "judgment and surgical technique," and statements that refer to "less than optimal outcomes." Omnibus Ex. A at 16-35.

Because the Government cannot establish a basis for admission of this evidence under Rule 404(b), and because Rule 403's balancing test tips overwhelmingly in favor of exclusion, the Court should not permit the Government to introduce this evidence.

### A. Applicable law.

***Non-propensity purpose.*** Federal Rule of Evidence 404(b) prohibits the introduction of "other acts" evidence to show a defendant's criminal propensity. The Rule provides that "[e]vidence of any other crime, wrong, or act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character." Fed. R. Evid. 404(b)(1). Courts may, however, admit other acts evidence for a non-propensity purpose. Fed. R. Evid. 404(b)(2) (listing examples of non-propensity purposes). Before admitting this evidence for one of the specified purposes, the Government has the burden of establishing that the act (1) "actually occurred," (2) is "probative of a material issue other than character," and (3) has probative value that "is not substantially outweighed by its prejudicial effect." *United States v. Bartholomew*, 310 F.3d 912, 921-22 (6th Cir. 2002).

***Intrinsic evidence rule.*** Courts may also admit evidence of other acts when the acts are found to be "intrinsic" or "inextricably intertwined" with the charged offense. *United States v. Hardy*, 228 F.3d 745, 748 (6th Cir. 2000). To admit this evidence, the Government has the burden of establishing that the evidence is "necessary to complete the story of the charged offense." *Id.* Intrinsic evidence typically includes evidence that bears a "causal, temporal or spatial connection with the charged offense[.]" *Id.* Although the Sixth Circuit has characterized the intrinsic evidence rule as a rule of inclusion, the rule is still "not an open ended basis to admit any and all other act evidence[.]" *Id.*

***Rule 403 balancing test: unfair prejudice.*** Regardless of whether the Government seeks to introduce other acts evidence under the intrinsic evidence rule or under some specified purpose in Rule 404(b)(2), the Court must still conduct the balancing test under Rule 403 to ensure the probative value of the evidence is not substantially outweighed by a danger of "unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Fed. R. Evid. 403; *Bartholomew*, 310 F.3d at 922. The phrase " 'unfair prejudice' refers to an undue tendency to suggest decision on an improper basis, commonly, though not necessarily, an emotional one or evidence designed to elicit a response from the jurors that is not justified by the evidence." *United States v. Ellis*, 147 F.3d 1131, 1135 (9th Cir. 1998) (internal quotation marks omitted).

Unfairly prejudicial evidence has the tendency to "lure the factfinder into declaring guilt on a ground different from proof specific to the offense charged." *Old Chief v. United States*, 519 U.S. 172, 180 (1997).

In conducting the Rule 403 balancing test, courts should "read every word of what will be before the jury" so it is clear exactly what the jury will hear. *United States v. McElmurry*, 776 F.3d 1061, 1068 (9th Cir. 2015). In many cases, "a reliance on an offer of proof simply [may not be] enough." *Id.* (footnote omitted).

When conducting the Rule 403 analysis, courts should consider "the availability of other means of proof." *United States v. Yu Qin*, 688 F.3d 257, 264 (6th Cir. 2012) (citation and quotation marks omitted). Indeed, the probative value of an item of evidence "is . . . informed by the availability of alternative means to present similar evidence" or to make the same point. *United States v. Awadallah*, 436 F.3d 125, 132 (2d Cir. 2006). This principle was illustrated most clearly in *Old Chief*, where the Supreme Court rejected the approach of viewing the probative value of a piece of evidence in isolation; rather, the probative value of an item of evidence should be viewed by "comparing it to evidentiary alternatives." 519 U.S. at 182-184. In other words, even though the Government is entitled to make its case, it is not entitled to present it in a way that maximizes the unfair prejudice. *See id.*

***Rule 403 balancing test: risk of confusion.*** Finally, courts may also exclude evidence under Rule 403 if the probative value is outweighed by the risk of undue

delay or confusing the issues. Fed. R. Evid. 403. The risk of causing a "trial within a trial" may be sufficient on its own to find that the admission of evidence, even if otherwise admissible, should be excluded under Rule 403. *Yu Qin*, 688 F.3d at 264 (reasoning that, "[i]n addition to lengthening the time needed for trial, presentation of the proffered evidence carries with it a high risk of confusing and/or misleading the jury."). The risk of collateral issues being litigated is a proper basis for exclusion under Rule 403. *United States v. Khan*, 508 F.3d 413, 417 (7th Cir. 2007) (affirming district court's Rule 403 exclusion of questioning about marriage fraud in prosecution for false statement to HUD).

### B. Discussion.

In the present case, the Court should exclude evidence of Alzadon's conduct at two hospitals that he worked at several years before the conduct in this case occurred. The Government has not established a valid basis for admission under Rule 404(b), and the probative value of the evidence is substantially outweighed by the danger of unfair prejudice, confusion, and waste of time.

### 1. The Court should exclude evidence of Jose Alzadon's conduct at Highlands Hospital.

The first set of evidence the Government seeks to introduce is a series of documents (from twenty years ago) that relate to Alzadon's conduct at Highlands Regional Hospital ("Highlands"). *See* Omnibus Ex. A at 16-35. The Court should exclude this evidence because (1) the evidence is not intrinsic evidence to the

charged crimes, (2) the Government has not articulated a valid basis for how the evidence is admissible to prove Alzadon's motive or plan, and (3) the probative value of the evidence is substantially outweighed by the risk of unfair prejudice, confusion of the issues, and waste of time.

*First*, the evidence of Alzadon's conduct at Highlands does not satisfy the intrinsic evidence rule because it is not necessary to complete the story of the crimes at issue. The Government argues that nearly the full extent of the background leading up to the Highlands' revocation of surgical privileges is "necessary to complete the story" of how Alzadon was denied enrollment with Wellcare and why Alzadon needed to impersonate his father. Omnibus at 12. Not so. All that is necessary for the Government to tell its narrative is that Alzadon was not able to become credentialed with Wellcare. The "why" does not matter. Further, the fact that this conduct occurred twenty years ago eliminates any suggestion that this evidence has a spatial or temporal connection to the conduct at KAC.

*Second* and relatedly, the Government has not articulated a valid basis for how the evidence is admissible for a non-propensity purpose. The Government argues that evidence of the full extent of Alzadon's conduct at Highlands is admissible to show his motive and plan. Omnibus at 12. Not so. The alleged "motive" that drove Alzadon to illegally assume his father's identity was that Alzadon could not become

credentialed with Wellcare.  The entirely separate question of *why* Alzadon could not become credentialed with Wellcare is not at issue in this case.

*Third*, the evidence of Alzadon's time at Highlands should be excluded under Rule 403 because the probative value of the evidence is substantially outweighed by the risk of unfair prejudice, confusion of the issues, and waste of time.

The exhibits the Government seeks to offer include highly inflammatory language that impugn the medical judgment and competency of Alzadon as a doctor. *See* Omnibus Ex. A at 16-35.  The exhibits contain the following statements regarding Alzadon's conduct:

(1) "serious concerns about the well being of Medical Center patients";

(2) "consider whether an investigation is warranted";

(3) "[a]ny patients that are currently inpatients of the Medical Center must be assigned to another practitioner";

(4) "your privileges will be restricted";

(5) "revoke your clinical privileges";

(6) "adverse recommendation"; and

(7) "an excessive number of surgical cases performed by you that resulted in less than optimal outcomes where your judgment and surgical technique were in question."

Omnibus Ex. A at 16-18.  This evidence would serve absolutely no purpose other than to invite the jury to conclude that Alzadon is a "bad doctor," consequently

"lur[ing] the factfinder into declaring guilt on a ground different from proof specific to the offense charged." *Old Chief*, 519 U.S. at 180.

The probative value of the Government's evidence is diminished when considering "the availability of other means of proof." *Yu Qin*, 688 F.3d at 264. Instead of admitting the full extent of disciplinary records related to Highlands, the Government can introduce evidence establishing that Alzadon was denied credentialing with Wellcare multiple times.

The probative value of the evidence is also substantially outweighed by the risk of litigation over collateral issues and confusion. The conduct at Highlands occurred twenty years ago and involved an entire factual nucleus unto itself. If this evidence is introduced, the defendants will have no choice but to engage in some level of damage control to mitigate the prejudice that will be caused. The Court should therefore exclude the evidence from Highlands to avoid litigation over collateral issues at trial. *See Khan*, 508 F.3d at 417.

### 2. The Court should exclude evidence of Jose Alzadon's conduct at Irvington Hospital.

The Government also seeks to introduce evidence regarding Alzadon's conduct at a different hospital (Irvington), this time from over twenty-five years ago. Omnibus at 14. The Court should exclude this evidence because (1) the Government has not articulated a valid basis for how the evidence is admissible to prove Alzadon's modus operandi, plan, or that he was on notice and (2) the probative value

of the evidence is substantially outweighed by the risk of unfair prejudice, confusion of the issues, and waste of time.

*First*, the Government has failed to articulate a valid basis for how the evidence is admissible to prove Alzadon's modus operandi, plan, or that he was on notice of medical standards. *See* Omnibus at 15. Specifically, the Government argues that the Irvington incident is probative of a material issue other than character: that the fact of the incident is admissible for the purpose of proving Alzadon's modus operandi and plan. Omnibus at 15.

The Government misunderstands modus operandi. In order for prior acts to be admissible for the purpose of establishing a modus operandi, the two acts must be so similar as to conclude that there is a unique "signature." *See United States v. Perry*, 438 F.3d 642, 648 (6th Cir. 2006). In other words, actions that involve "nearly identical method of operations." *United States v. Collard*, 849 F. App'x 523, 531 (6th Cir. 2021). Modus operandi evidence is typically used when the identity of a perpetrator is at issue. *See United States v. Fountain*, 2 F.3d 656, 668 (6th Cir. 1993).

Here, the conduct at Irvington does not even come close to involving a "nearly identical method of operations" as at KAC. At Irvington, Dr. Ricardo Alzadon (the father), the Chief of Thoracic Surgery, delegated authority to his son (Alzadon) to perform a procedure. Omnibus Ex. A at 36. This was something Dr. Ricardo Alzadon felt "he had the authority to do" in his capacity as Chief. *Id.* In the present

case, however, the Government's theory is that Alzadon conspired with Mr. Bregenzer and others to totally falsify the involvement of Dr. Ricardo Alzadon and bill under Dr. Ricardo Alzadon's DEA number. *See* Omnibus at 8 ("Alzadon continu[ed] to impersonat[e] his father[.]"). These are apples and oranges. The Government has therefore failed to establish that the Irvington conduct is admissible to prove a modus operandi.

The Government also argues that the Irvington conduct is relevant to show that Alzadon was "on notice that it was wrong . . . to perform tasks assigned to his father that were outside of Alzadon's own permissions to perform." Omnibus at 15. Not so. The disciplinary proceedings at Irvington involved internal hospital rules and an issue of delegation of authority. *See* Omnibus Ex. A at 36-38. Thus, the conduct at Irvington was limited to internal dealings at the hospital, whereas the conduct at issue in the present case involves dealings with third parties—i.e., Medicare, Medicaid, and other health care benefit programs. Thus, contrary to the Government's theory here, Alzadon hardly "engaged in the same conduct at KAC." Omnibus at 15.

The Government's reliance on *United States v. Suetholz*, 2024WL4182903 (6th Cir. Sept. 13, 2024), does not demand a different result. *See* Omnibus at 15. There, the Sixth Circuit held that proof of a medical board investigation into prescribing practices was admissible to prove absence of mistake in a prosecution

for prescribing controlled substances outside the usual course of professional practice. *Seutholz*, 2024WL4182903 at, *6. The Sixth Circuit held that evidence of "[t]he Board's investigation of and resulting sanctions for Suetholz demonstrated his knowledge of the medical standards applicable to patient records and prescription practices." *Id.* Here, the conduct at Irvington did not involve medical standards; it involved internal hospital rules. And there is no doubt that different hospitals have different rules and procedures. "A cardiovascular center, for example, would have much different patient care policies in place than a pediatrician's office." *How Healthcare Policies Affect Providers, Patients and Beyond*, Johnson & Wales Univ. (Apr. 30, 2024), https://rb.gy/7ultd4.

So, the argument that Alzadon was "on notice that it was wrong . . . to perform tasks assigned to his father" (Omnibus at 15) represents a crude—and inaccurate—comparison between Alzadon's conduct at Irvington and his conduct at KAC. As a result, the Government has failed to establish that the Irvington conduct is admissible to prove notice.

*Second*, the Court should also exclude the evidence of Alzadon's Irvington conduct under Rule 403 because of the risk of confusion of the issues. As argued immediately above, the conduct at Irvington was so different in nature and so far back in time that infecting the trial with this evidence would run the risk that the parties delve into litigating collateral issues. *See Khan*, 508 F.3d at 417. Whatever

threadbare probative value the Government seeks to generate from the Irvington conduct, it is substantially outweighed by the risk that its introduction will invite attack from all three defendants and cast that phase of the trial into a debate about a collateral, fact-intensive issue.

That the Government seeks to impugn knowledge of the misconduct to Mr. Bregenzer (Omnibus at 15) compounds the prejudice to Mr. Bregenzer. As explained above, *see* BACKGROUND, Mr. Bregenzer is charged with conspiring with Alzadon to commit health care fraud and to violate the Controlled Substances Act. S-1 Indictment ¶¶ 34, 44-48. Mr. Bregenzer is also charged with aiding and abetting Alzadon's aggravated identity theft. *Id.* at ¶¶ 40-43. Thus, any evidence that implicates Alzadon will be prejudicial for Mr. Bregenzer. Here, if the jury is permitted to learn about Alzadon's conduct at Highlands, there is a very real risk that the jury will conclude that Mr. Bregenzer knowingly allowed an incompetent doctor to work at KAC. Consequently, if the jury improperly concludes that Alzadon is guilty merely because he has a history of being a "bad doctor," then there is a risk that the jury also improperly concludes that Mr. Bregenzer (who is charged with aiding and abetting Alzadon) is probably guilty as well. This danger, of "lur[ing] the factfinder into declaring guilt on a ground different from proof specific to the offense charged," *Old Chief*, 519 U.S. at 180, can and should be avoided by excluding evidence of Alzadon's conduct at Irvington.

*   *   *

Finally, to the extent the Government seeks to admit evidence of Alzadon's previous efforts to "assume his father's identity," Omnibus at 2, the Court should exclude the prior hospital conduct. The obvious effort by the Government here is to imply to the jury that "once an imposter, always an imposter." Rule 404 prohibits this.

## II. The Court should exclude evidence of the Medicare enrollment form.

The Government seeks to admit a Medicare enrollment form allegedly filled out, reviewed, signed, and submitted by Alzadon. Omnibus Ex. A at 93-118. The Government has not established that the false statement on the enrollment application "actually occurred." *Bartholomew*, 310 F.3d at 921-22. The Government has offered no admission, stipulation, or other foundational evidence to establish that Alzadon ever reviewed the enrollment form, filled it out, or signed it. The Government has not even explained the origin of this so-called enrollment form. The Court should decline to admit this evidence on this basis alone.

**CONCLUSION**

For the reasons stated above, the Court should decline to admit the evidence of Alzadon's prior conduct at other hospitals or his Medicare enrollment form.

Dated: February 3, 2025

Respectfully submitted,

*/s/   Ronald W. Chapman II.*
Ronald W. Chapman II, Esq., LL.M.
MI Bar No. P73179
(Admitted Pro Hac Vice)
CHAPMAN LAW GROUP
1441 West Long Lake Road, Suite 310
Troy, Michigan 48098
T: (248) 644-6326
F: (248) 644-6324
RWChapman@ChapmanLawGroup.com

*/s/   John J. Dowling III.*
John J. Dowling III.
NC Bar No. 57517
(Admitted Pro Hac Vice)
DOWLING DEFENSE GROUP LLC
101 N. McDowell St, Suite 200
Charlotte, North Carolina 28204
Ph: 631-574-7905
E: john@dowlingdefensegroup.com

*Attorneys for Defendant Michael Bregenzer*

## CERTIFICATE OF SERVICE

I hereby certify that I have this day served a copy of the foregoing through the

CM/ECF system on counsel for all parties.

This the 3rd day of February, 2025.

/s/   *John J. Dowling III.*
John J. Dowling III.
